## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| KIROMIC BIOPHARMA, INC., | Case No.  25-10552 (MFW) |
| Debtor. | |
| | **Hearing Date: TBD** |
| | **Objection Deadline: TBD** |

## CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER: (A) APPROVING ASSET PURCHASE AGREEMENT PURSUANT TO 11 U.S.C. § 363(b) AND (f); AND (B) GRANTING RELATED RELIEF

Jeoffrey L. Burtch, solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of the above-captioned debtor (the "Debtor"), hereby files this motion (the "Motion") for entry of an order (i) approving the Asset Purchase Agreement (the "APA") substantially in the form attached as **Exhibit "A"** hereto; and (ii) granting related relief. In support of the Motion, the Trustee respectfully states as follows:

### JURISDICTION, CORE NATURE AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are §§ 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure.

3.      Pursuant to Local Rule 9013-l(f), the Trustee consents to the entry of a final order with respect to the Motion if it is determined that the Court lacks adjudicatory authority under Article III of the United States Constitution to enter such final order absent consent of the parties.

## BACKGROUND

4.      On March 21, 2025 (the "Petition Date"), the Debtor filed a voluntary petition with the Court for relief under chapter 7 of the Bankruptcy Code, commencing the above-captioned bankruptcy case (the "Bankruptcy Case"). On or about the Petition Date, the Office of the United States Trustee appointed the Trustee as the interim trustee for the Estate of the Debtor. The Section 341 Meeting of Creditors is scheduled for April 15, 2025.

5.      Prior to the Petition Date, the Debtor was a clinical-stage biotherapeutics company developing proprietary cancer treatments that are currently subject to clinical trials. The Debtor primarily conducted its operations and research out of a leased facility located at 7707 Fannin Street, Suite 200, Houston, Texas (the "Leased Premises"). The Debtor asserts that it ceased all operations as of the Petition Date, and the Trustee is not operating the business.

## DEBTOR'S BUSINESS AND PROPOSED SALE

6.      The Debtor possesses certain intellectual property developed to treat patients with stage 4 metastatic or locally-advanced non-small cell lung cancer (NSCLC) who have failed to respond to standard therapies. The Debtor has three product candidates in development. Of these three product candidates, only one – Deltacel – is currently the subject of a clinical trial ("Deltacel Trial"), whereas the other two products are still in development in the pre-trial stage.

7.      The Debtor's former Chief of Staff, Dr. Scott Dahlbeck, has represented to the Trustee that the Deltacel Trial is currently paused and there is an urgent need to restart the clinical trial to, among other things, (i) provide patients with therapeutic product for scheduled treatments, (ii) ensure compliance with FDA regulations to avoid suspension of the Deltacel Trial, (iii) maintain the integrity of the Deltacel Trial, (iv) prevent denial of new patients into the Deltacel Trial, and (v) avoid the loss of value of the Debtor's intellectual property and research.

2

8.      Prior to the Petition Date, S.hield Cap1tal Funding LLC ("S.hield Cap1tal"), the Debtor's largest equity holder, provided the working capital to operate the Debtor's business. Between April 2024 and January 2025, S.hield Cap1tal made loans to the Debtor pursuant to eight secured promissory notes ("Notes") in the original principal amount of $14,239,703 (the "Secured Claim").

9.      The Notes are secured by the Debtor's (i) fixtures and equipment (as defined in the UCC), (ii) all Intellectual Property (as defined in the Notes), and (iii) all proceeds of the foregoing (collectively, the "Collateral"). S.hield Cap1tal Funding perfected its security interest in the Collateral by (a) filing a UCC-1 financing statement with the Delaware Secretary of State and (b) recording certain security agreements with the Copyright Office and the Patent and Trademark Office.

10.      Shortly after the Petition Date, Immunocell Therapeutics, Inc. ("Buyer"),[1] contacted the Trustee's counsel and made an offer to purchase substantial portion of the Estate's assets. Shannon Ralson is the sole member and manager of S.hield Cap1tal and the sole director and stockholder Buyer.

11.      After arm's length negotiations, and the exchange of multiple counter offers, the Trustee and Buyer reached an agreement and entered into the APA.[2] See **Exhibit A**.

---

[1] S.hield Cap1tal , assigned its claim to Buyer and Buyer now holds all rights to the Secured Claim.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the APA.

## TERMS OF THE APA

**A.      Summary of the APA**

12.      The principal terms of the APA are summarized as follows:

| Agreement Provision | Summary Description |
|---|---|
| **Seller** | Jeoffrey L. Burtch, solely in his capacity as chapter 7 trustee for the bankruptcy estate of the Debtor. |
| **Buyer** | Immunocell Therapeutics, Inc. |
| **Consideration (APA at §§ 1, 2, 7)** | The purchase price for the Purchased Assets (as defined below) shall be comprised of the following (the "<u>Purchase Price</u>"): <br><br> a)  $250,000 in cash (the "<u>Cash Payment</u>"); <br><br> b)  Assumption by Buyer of the Assumed Liabilities; and <br><br> c)  a credit bid of Buyer's Secured Claim in the amount $5,000,000. <br><br> As additional consideration to Seller, Buyer agrees to use commercially reasonable efforts to assist Seller in locating and recovering all Excluded Assets. To the extent that Buyer collects any Excluded Assets of Seller after Closing, Buyer shall hold such funds in trust for the benefit of Seller and remit such funds to Seller within five (5) business days. |
| **Purchased Assets (APA at §§ 3, 19)** | All of the Estate's right, title, and interest in and to the following on an "as is-where is" basis without representation or warranty of any kind or nature: <br><br> a)  All intellectual property, including but not limited to all patents, copyrights, trademarks and any goodwill in any marks, know how, trade secrets, trademarks, customer lists, product lists, data bases; all clinical data and records; domain names; and records and information related to all clinical trials or the business of Debtor, whether stored onsite or in another database, identified on **Schedule 1**, and the right to sue for any past or future infringement, misappropriation, or disclosure of any rights in such intellectual property; <br><br> b)  All furniture, fixtures, equipment, inventory, machinery, tools, office equipment, supplies, computers, telephones, and other tangible property (and any software associated therewith) owned by the Debtor and located at the Leased Premises, plus all doses of Deltacel which may be located offsite, including but not limited to those items identified on **Schedule 2**; <br><br> c)  All of the Estate's rights and obligations under the executory contracts and unexpired leases of personal property specifically listed in **Schedule 3** (collectively the "<u>Assigned Contracts</u>"); <br><br> d)  All of the Estate's rights and obligations under unexpired leases of non-residential real property leases for the Leased Premises as modified by the terms set forth on **Schedule 4** (collectively, the |

LEGAL\7665527\7

| Agreement Provision | Summary Description |
|---|---|
| | "Assigned Leases") and any security deposits held by the lessor with respect to the Assigned Leases ("Assigned Lease Security Deposits");<br><br>e)  Subject to the Bankruptcy Code and applicable non-bankruptcy law, all rights of the Estate under any non-disclosure agreements and/or confidentiality agreements necessary to the enforcement of any rights in any intellectual property as set forth in sub-paragraph 3(a); and<br><br>f)  All books and records related to the business of Debtor, subject to the limitation provided in Paragraph 4(g). |
| **Excluded Assets (APA at § 4)** | Buyer expressly understands and agrees that it is not purchasing or acquiring:<br><br>a)  All cash and cash equivalents on hand as of the Petition Date or thereafter, wherever located, including in accounts, lock boxes and similar accounts (whether maintained at a bank, savings and loan or other financial institution);<br><br>b)  Except as otherwise expressly provided herein to the contrary, all accounts receivable, pre-payments, advance payments, security deposits (other than the Assigned Lease Security Deposits), escrow deposits, accounts, retainers, notes receivable, and other rights to payment, and any security, lien, claim, remedy, or other right related to any of the foregoing;<br><br>c)  All future refunds and credits of income taxes and any other taxes relating to periods ending on or before the Closing including, but not limited to, any net operating losses ("NOLs");<br><br>d)  All rights in and to any insurance policy or policies (and their proceeds) and any insurance rebates relating to any insurance policies;<br><br>e)  Except for the rights of Buyer to sue for any past or future infringements, misappropriation, or disclosure of any rights in intellectual property as set forth in Paragraph 3(a), all rights to any claims and causes of action of any kind, whether sounding in law or in equity, including, but not limited to (i) all avoidance actions under chapter 5 of the Bankruptcy Code and (ii) all claims and causes of action against any directors and officers;<br><br>f)  The Debtor's interest in Green Planet Pharma, Inc. and interests in any other incorporated or unincorporated businesses including any limited liability company, partnership or joint venture;<br><br>g)  All books and records Seller deems necessary for the administration of the Bankruptcy Case; provided, however, to the extent books and records subject to this subparagraph would fall under the description set forth in Paragraph 3(f), Buyer and Seller shall cooperate on the transfer and access to any books and records required for the administration of the Bankruptcy Case. Buyer will preserve, maintain, and provide the Trustee with reasonable access to all of the Debtor's books and records, whether in electronic or physical format, without |

| Agreement Provision | Summary Description |
|---|---|
| | charge until the Bankruptcy Case is closed. For the avoidance of any doubt, Buyer will not destroy or delete any electronic or physical copies of the Debtor's books and records (including but not limited to emails) without the written permission of Seller; and<br><br>h)  All rights of Seller under this Agreement or any other agreement entered into pursuant hereto. |
| **Assumed Liabilities (APA at § 5)** | Seller shall assign to Buyer and Buyer shall assume from Seller and shall perform and discharge in accordance with their respective terms, all of the Estate's obligations for the liabilities set forth below:<br><br>a)  All employee related obligations and liabilities identified in **Schedule 5**;<br><br>b)  All obligations and liabilities owed to the vendors and other creditors identified in **Schedule 6**;<br><br>c)  All obligations and liabilities under the Assigned Contracts and Assigned Leases (collectively, the "Assigned Contracts/Leases") that are assumed by Seller and assigned to Buyer pursuant to an order or orders entered by the Court in the Bankruptcy Case including all amounts necessary to cure all defaults and to pay all actual pecuniary losses to the extent required by § 365(b)(1)(A) and (B) of the Bankruptcy Code and any order of the Court (the "Cure Amount"). Buyer shall provide a final list of all Assigned Contracts/Leases to Seller prior to the entry of the Sale Order. Notwithstanding the foregoing, no executory contract or unexpired lease shall be an Assigned Contract/Lease, whether or not listed in **Schedules 3 or 4**, to the extent such executory contract or unexpired lease is not assumed and assigned to Buyer by order of the Court for any reason whatsoever. In such an event, the previously considered Assumed Contract/Lease shall automatically be deemed an Excluded Asset without any adjustment to the Purchase Price (other than by reduction of the Cure Amount).<br><br>d)  All liabilities arising out of, or with respect to, the Purchased Assets arising after the Closing. |
| **Sale Order (APA at § 16)** | The APA requires entry of the Sale Order approving the sale free and clear of liens and encumbrances. |
| **Key Dates (APA at § 13, 16)** | The APA may be terminated by Buyer or Seller if the Sale Order has not been entered by April 15, 2025, subject to the Court's availability (the "Termination Date"). |

### B.    Consideration

13.    Buyer's consideration (the "Consideration") is comprised of four components.

First, Buyer is offering cash consideration in the amount of $250,000 (the "Cash Payment"). Upon

execution of the APA, Buyer provided the Trustee with a $25,000 deposit to be credited against the Purchase Price. The Cash Payment shall be free and clear of all liens, encumbrances or other interests of Buyer and shall be available to pay administrative expenses and claims of the Estate other than the Secured Claim. Second, Buyer is offering a credit bid of its Secured Claim in the amount of $5 million. Third, Buyer is assuming certain liabilities of the Debtor including certain (a) vendor and other creditor claims; (b) employee claims; and (c) cure claims under the Assigned Contracts/Leases.[3]

14.     The Trustee believes that the Consideration provided this offer is superior to any other offer that he might reasonably expect, if any other offer were to be made for the Debtor's assets.

### C.     Expedited Sale Process

15.     The Trustee has agreed to an expedited private sale process based on the representation from Dr. Dahlbeck that an expedited sale process and closing was necessary to provide patients in the Deltacel Trial with therapeutic product and to avoid irreparable harm to cancer patients enrolled in the Deltacel Trial.

16.     Notwithstanding the proposed private sale process, the Trustee has negotiated the right to consider any competing offers for the Purchased Assets (each an "Alternative Offer") prior to the hearing on the Motion (the "Sale Hearing"). The Trustee, in his sole and absolute discretion, has the right to seek Court approval to sell the Purchased Assets pursuant to any Alternative Offer. In the event that Seller receives an Alternate Offer, Buyer shall have the right to credit bid for the Purchased Assets up to the full amount of the Secured Claim as may be allowed by the Court. Under the facts of this Bankruptcy Case, the Trustee believes that his best course of action is to

---

[3] The Assumed Liabilities will be determined upon completion of the exhibits and schedules to the APA.

proceed by way of a private sale to Buyer subject to any Alternative Order that may be made prior to the Sale Hearing, and to provide notice of the sale to parties in interest.

17.    Importantly, the Trustee and Buyer have excluded all cash and cash equivalents except those related to the Assigned Contracts/Leases, insurance policies and their proceeds, as well as all causes of action including any avoidance actions under chapter 5 of the Bankruptcy Code and claims against any directors and officers. When taken as a whole, the Trustee believes the Consideration offered by Buyer represents a fair and prudent outcome, while maximizing the value of the Purchased Assets for the Estate and avoiding harm to cancer patients enrolled in the Deltacel Trials. Moreover, given the lack of funding to operate the Debtor's business, the Trustee does not believe that it is feasible to attempt to sell the Debtor's business as a going concern through a traditional marketing program. For all of these reasons, the Trustee believes that an expedited sale as contemplated herein is in the best interests of the Estate and its creditors.

**D.    Assumption and Assignment of Executory Contracts and/or Unexpired Leases**

18.    In conjunction with the sale, the Trustee will seek to assume and assign to Buyer the Assigned Contracts/Leases.

19.    Within two (2) business days after the filing of the Motion, and promptly after Buyer identifies the contracts it wishes to designate as Assigned Contracts/Leases, the Trustee will file and serve upon counterparties to the Assigned Contracts/Leases (the "Counterparties") a notice substantially in the form attached hereto as **Exhibit "B"** (the "Cure Notice"), informing the Counterparties that the Debtor's executory contracts and unexpired leases may be assumed and assigned, and setting out what the Debtor's records show to be the applicable cure amounts, if any (the "Cure Amounts").

20.    Buyer shall identify all of the Assigned Contracts/Leases prior to the Sale Hearing. The Trustee will send Cure Notices to the counterparties of such Assigned Contracts/Leases

promptly after they are so identified in writing by Buyer. The counterparties shall have 21 days from service of the Cure Notice in which to object to the assumption or Cure Amount, and if no such objection is received, the contract shall become an Assigned Contract/Lease.

### E.    Proposed Objection Deadlines

21.    All objections to the relief sought through the Motion, including objections to the Cure Amounts and objections to the proposed assumption and assignment of the agreements identified in any bid, must: (i) be in writing; (ii) state with specificity the nature of such objection (with appropriate documentation in support thereof); (iii) comply with the Bankruptcy Rules and the Local Rules; (iv) be filed with this Court and served upon (so as to be received by) the service parties (A) on or before the deadline to object to the Motion, or (B) in the case of a contract identified as an Assigned Contract/Lease, not later than 21 days following the mailing of a Cure Notice.

22.    A party failing to file and serve a timely objection to the Cure Amounts and/or the Trustee's assumption and assignment of any executory contract or unexpired lease shall be forever barred from objecting to the Cure Amounts and/or assumption and assignment, and will be deemed to consent to the Cure Amounts and/or assumption and assignment. In the event that timely objection to the Cure Amounts and/or assumption and assignment of any executory contract or unexpired lease is filed, and the parties are unable to consensually resolve the dispute, such objection will be determined at the hearing currently scheduled for consideration of the Motion, or such other date and time as may be fixed by this Court.

### LOCAL RULE 6004-1(b) PROVISIONS

23.    The APA contains the following terms, conditions and provisions that are to be highlighted in the Motion pursuant to Local Rule 6004-1(b):

a) **<u>Sale to Insider</u>**: Buyer is owned and controlled by S.hield Cap1tal, the largest shareholder and the prepetition senior secured creditor of the Debtor.

b) **<u>Releases</u>**: There are no releases in the APA.

c) **<u>Private Sale</u>**: While no auction or competitive bidding process is explicitly contemplated, the Trustee will consider any Alternative Offers that might be made prior to the Sale Hearing.

d) **<u>Closing Deadline</u>**: The APA requires that the Sale is closed no later than April 15, 2025, subject to the Court's availability.

e) **<u>Record Retention</u>**: The APA transfers the Debtor's books and records to Buyer. However, Buyer and Seller shall cooperate on the transfer and access to any books and records required for the administration of the Bankruptcy Case. Buyer will preserve, maintain, and provide the Trustee with reasonable access to all of the Debtor's books and records, whether in electronic or physical format, without charge until the Bankruptcy Case is closed. For the avoidance of any doubt, Buyer will not destroy or delete any electronic or physical copies of the Debtor's books and records (including but not limited to emails) without the written permission of Seller

f) **<u>Sale of Avoidance Actions</u>**. The APA does not include the sale of avoidance actions.

g) **<u>Credit Bid</u>**. As part of the Consideration for the sale, Buyer is credit bidding $5 million of its Secured Claim. In the event that the Trustee receives an Alternate Offer, Buyer shall have the right to credit bid for the Purchased Assets up to the full amount of the Secured Claim as may be allowed by the Court.

h) **<u>Relief from Fed. R. Bankr. P. 6004(h)</u>**. The Parties request that the Order waive Rule 6004(h) to allow the Sale to close immediately after the entry of the Sale Order.

## <u>SUMMARY OF RELIEF REQUESTED</u>

24.    By the Motion, the Trustee seeks the entry of the Sale Order attached hereto as

**<u>Exhibit "C"</u>**: (a) approving and authorizing the sale of the Purchased Assets free and clear of

liens, claims, interests, and encumbrances; (b) authorizing and approving the APA; and

(c) granting certain related relief.

## ANALYSIS

**A.    The Trustee requests authority to sell the Purchased Assets outside of the ordinary course of business.**

25.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Courts have held that proposed sales of property pursuant to § 363(b) should be approved upon a finding that the decision to enter into the transaction represents a reasonable business judgment. *See, e.g., In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason" justifying sale of assets); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a § 363 sale are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith"). Further, sales of property outside of the ordinary course of business may be by private sale, as opposed to public auction. *See* Bankruptcy Rule 6004(f)(1).

26.    The Consideration is the result of arm's length negotiations, and, based on communications with various parties in interest, the Trustee believes that the Consideration is reasonable. No other offers have been received for the Purchased Assets.

27.    As noted above, as an additional test of the fairness of the APA, the Trustee will consider Alternative Offers for the Purchased Assets until the commencement of the Sale Hearing. If an Alternative Offer is received by the Trustee in writing on or before the Sale Hearing that the Trustee determines to be higher and better than that under the APA, the Trustee will confer with the potential buyers and use the hearing date on the Motion as a status conference to report to the Court on the status of competing offers and his proposed procedure to conduct a prompt auction,

11

and return to Court after the auction to approve the sale to the bidder submitting the highest and best offer for the Purchased Assets.

28.     If no additional bids are received by the Trustee, then he will proceed with the Sale Hearing as scheduled and request that the Court approve the APA for the reasons set forth above.

**B.      The Trustee requests that the sale be free and clear of all liens, claims, rights, and encumbrances.**

29.     Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if -
>
> > (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> >
> > (2) such entity consents;
> >
> > (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> >
> > (4) such interest is in a bona fide dispute; or
> >
> > (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

30.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any one of the elements would permit sale of the Purchased Assets free and clear of all liens, encumbrances, liabilities, and other interests, (collectively, "Interests"). *See, e.g., Citicorp Homeowners Servs., Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

31.     To the extent there are any Interests encumbering the Purchased Assets, the Trustee believes that, as to each and every entity or person having any such Interest in the Property, at least one of the five criteria set forth in § 363(f) of the Bankruptcy Code will apply.

32.     Applicable caselaw provides that a trustee may sell a debtor's assets free and clear of all Interests, with all Interests attaching to the net proceeds of the sale. *See, e.g., Folger Adam*

*Security, Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000) ("[T]he holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of section 363(f) and, therefore, attaches to the proceeds of the sale."); *In re WPRV-TV, Inc.*, 143 B.R. 315, 321 (D.P.R. 1991); *Citicorp Homeowners*, 94 B.R. at 345.

33.    To the extent that the Court determines that Interests exist that would not be extinguished as described above, the Trustee submits that holders of any such Interests should be deemed to have waived their rights if they fail to object to the Motion. *See, e.g., Folger Adam*, 209 F.3d at 265. As the United States Court of Appeals for the Third Circuit recognized, "Due Process requires 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)).

34.    Importantly, Buyer is the Debtor's senior secured creditor and consents to the sale. The Trustee also expects that any holders of Interests that may exist will consent or be deemed to have consented to the sale, given that the sale protects their Interests by maximizing the value of the Purchased Assets, and all Interests will attach to the net proceeds of the sale. The Trustee therefore anticipates that the sale will satisfy the second element of § 363(f). *See, e.g., Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, secured creditor deemed to have consented under § 363(f)(2)); *Pelican Homestead & Sav. Ass'n v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

35.    Accordingly, the Trustee requests that the Court declare that the transfer of the Purchased Assets to Buyer will be free and clear of all Interests to the fullest extent permitted

LEGAL\76655277\7

under § 363(f) of the Bankruptcy Code, with Interests attaching to the proceeds of the sale.

### C.      The Assumption and Assignment of the Executory Contracts and/or Unexpired Leases Should Be Approved

36.      Section 365(a) of the Bankruptcy Code provides that a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." The standard governing bankruptcy court approval of a trustee's decision to assume or reject an executory contract or unexpired lease is whether the trustee's reasonable business judgment supports assumption or rejection. *See, e.g., Sharon Steel Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *In re Stable Mews Assoc., Inc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984). The business judgment test "requires only that the trustee demonstrate that [assumption or] rejection of the executory contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (*quoting Stable Mews Assoc.*, 41 B.R. at 596). Any more exacting scrutiny would hinder the administration of the estate and increase costs. *See Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

37.      In order to assign an executory contract, a trustee must first assume it. In order to assume a contract, a trustee must "cure, or provide adequate assurance that [he] will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1). Here, the Trustee proposes to circulate the Cure Notice to the Counterparties within two (2) days following the filing of the Motion, which will provide Counterparties with sufficient opportunity to assess the Trustee's proposed Cure Amounts and assert any objections.

38.      Once an executory contract is assumed, the trustee may then seek to assign the contract. Pursuant to § 365(f) of the Bankruptcy Code, a trustee may assign an assumed contract only if "adequate assurance of future performance by the assignee of such contract or lease is

provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes. Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that the debtor will thrive and pay rent). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and wherewithal to manage the type of enterprise or property assigned. *See In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

### D.    Relief from Bankruptcy Rule 6004(h) is Warranted.

39.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Trustee requests that the Court waive this 14-day stay, and that the Sale Order be effective immediately.

40.    The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h)*. Although Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and waive the 14-day stay, the leading bankruptcy treatise suggests that the fourteen day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY 15th Ed. Rev., ¶ 6004.10 at 6004-18 (L. King, 15th rev. ed. 2008). The treatise

LEGAL\76655277\7

further suggests that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.

41. As explained above, time is of the essence in this Bankruptcy Case. The Debtor has ceased all operations, and the maintenance of the Purchased Assets will be costly for the Estate. The Estate does not have sufficient funds to secure, maintain and insure the Purchased Assets. The Trustee is informed and believes that he needs to move as expeditiously as possible to (i) provide patients with therapeutic product for scheduled treatments, (ii) ensure compliance with FDA regulations to avoid suspension of the Deltacel Trial, (iii) maintain the integrity of the Deltacel Trial, (iv) prevent denial of new patients into the Deltacel Trial, and (v) avoid the loss of value of the Debtor's intellectual property and research. Consequently, a waiver of the Bankruptcy Rule 6004(h) stay is in the Estate's best interest.

**E.    The Trustee requests that his proposed notice be deemed adequate.**

42. Under Bankruptcy Rule 2002(a) and (c), the Trustee is required to notify creditors of the terms and conditions of the sale and the objection deadline. The Trustee respectfully submits that the Motion, which contains the type of information required under Bankruptcy Rule 2002(c), will enable interested parties to participate in the Sale Hearing if they so choose.

43. The Trustee shall promptly serve a copy of the Motion, including all attachments, first class mail upon: (a) the Office of the United States Trustee; (b) counsel for the Debtor; (c) counsel for Buyer; (d) counterparties to the known Assigned Contracts/Assigned Leases; (e) all parties who filed proofs of claims in the Bankruptcy Case; (f) any creditors identified in the Debtor's schedules; (g) all parties known to the Trustee to have expressed any interest in purchasing any assets of the Estate; and (h) all parties in interest who requested notice pursuant to Bankruptcy Rule 2002.

16

44.     The Trustee submits that this notice constitutes good and adequate notice under the circumstances, and respectfully submits that no further notice is necessary.

**No Prior Request**

45.     No prior request for the relief sought herein has been requested from this Court or any other court.

**Conclusion**

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter the Sale Order substantially in the form attached hereto as **Exhibit C**: (a) approving and authorizing the Sale of the Purchased Assets free and clear of Interests; (b) authorizing and approving the APA; and (c) granting certain related relief and such other relief as the Bankruptcy Court may deem appropriate.

Dated: April 4, 2025                    COZEN O'CONNOR

                                        */s/ Mark E. Felger*
                                        Mark E. Felger (DE 3919)
                                        Gregory F. Fischer (DE 5269)
                                        1201 N. Market Street, Suite 1001
                                        Wilmington, DE 19801
                                        T: (302) 295-2000
                                        mfelger@cozen.com
                                        gfischer@cozen.com
                                        *Proposed Counsel to Jeoffrey L. Burtch, Chapter 7 Trustee*