# EXHIBIT A
# APA

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") is made and entered as of April 4, 2025, by and between **Immunocell Therapeutics, Inc.**, a Delaware corporation ("Buyer") and **Jeoffrey L. Burtch, solely in his capacity as the chapter 7 trustee for the bankruptcy estate of Kiromic Biopharma, Inc.** ("Seller," and together with Buyer, the "Parties" and each a "Party").

WHEREAS, on March 21, 2025 (the "Petition Date"), Kiromic Biopharma, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court"), thereby commencing the bankruptcy case titled *In re Kiromic BioPharma, Inc.*, Case No. 25-10552-MFW (the "Bankruptcy Case");

WHEREAS, on or about the Petition Date, Seller was appointed the interim chapter 7 trustee of the Debtor's bankruptcy estate (the "Estate") in the Bankruptcy Case;

WHEREAS, the Debtor's primary business operations included the development of certain proprietary cancer treatments currently subject to clinical trials;

WHEREAS, the Debtor's principal place of business is located at 7707 Fannin Street, Suite 200, Houston, TX 77054, with the Debtor leasing additional suites at the same address (collectively, the "Leased Premises");

WHEREAS, S.hield Cap1tal Funding LLC, a Texas limited liability company (the "Secured Creditor"), the Debtor's senior secured lender, made prepetition loans to the Debtor in the aggregate original principal amount of $14,239,703 plus all accrued and unpaid interest thereon (the "Secured Claim") as evidenced by eight senior secured promissory notes and security agreements (together with all related documents, collectively, the "Loan Documents"). The loans are secured by the Debtor's (i) fixtures (as defined in the UCC) and equipment (as defined in the UCC), (ii) all Intellectual Property (as defined in the Notes), and (iii) all proceeds of the foregoing (collectively, the "Collateral"). Secured Creditor perfected its security interest in the Collateral by (a) filing a UCC-1 financing statement with the Delaware Secretary of State and (b) recording certain security agreements with the U.S. Copyright Office and the U.S. Patent and Trademark Office;

WHEREAS, prior to the date of this Agreement, the Secured Creditor transferred and assigned all of its rights and interests in and to the Loan Documents and Collateral to Buyer;

WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell and transfer to Buyer, all of the Purchased Assets and Assumed Liabilities (as each term is defined below) for the consideration and upon the terms and conditions set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the mutual promises herein made, the Parties hereby agree as follows:

1. **Purchase Price and Other Consideration**. The purchase price for the Purchased Assets (as defined below) shall be composed of the following (the "Purchase Price"): (i) the amount of Two Hundred Fifty Thousand Dollars (US$250,000.00) in cash to be paid by Buyer to Seller (the "Cash Payment"); (ii) the Assumed Liabilities; and (iii) a credit bid of the Secured Claim in the amount of Five Million U.S. Dollars (US$5,000,000.00). For the avoidance of any doubt, the Cash Payment

shall be free and clear of all liens, encumbrances or other interests of Buyer and shall be available to pay administrative expenses and claims of the Estate other than the Secured Claim.

2. **Deposit**. Upon execution of this Agreement, Buyer shall pay to Seller a deposit in the amount of Twenty-Five Thousand Dollars (US$25,000.00) (the "Deposit") which shall be credited against the Purchase Price at Closing and shall be non-refundable, except as provided in Paragraph 14 of this Agreement.

3. **Purchased Assets**. Subject to the terms and conditions of this Agreement and the Sale Order (defined below), at the Closing, Seller shall convey, transfer, assign and sell to Buyer, and Buyer shall purchase from Seller, free and clear of any and all claims, liens, and encumbrances, any and all of Seller's interest in the following property, solely to the extent assignable or transferable under applicable law or with the consent of any third-party, if necessary and obtained (collectively, the "Purchased Assets"):

 a. All intellectual property, including but not limited to all patents, copyrights, trademarks and any goodwill in any marks, know how, trade secrets, trademarks, customer lists, product lists, data bases; all clinical data and records; domain names; and records and information related to all clinical trials or the business of Debtor, whether stored onsite or in another database, identified on **Schedule 1**, and the right to sue for any past or future infringement, misappropriation, or disclosure of any rights in such intellectual property;

 b. All furniture, fixtures, equipment, inventory, machinery, tools, office equipment, supplies, computers, telephones, and other tangible property (and any software associated therewith) owned by the Debtor and located at the Leased Premises, plus all doses of Deltacel which may be located offsite, including but not limited to those items identified on **Schedule 2**;

 c. All of the Estate's rights and obligations under the executory contracts and unexpired leases of personal property specifically listed in **Schedule 3** (collectively the "Assigned Contracts");

 d. All of the Estate's rights and obligations under unexpired leases of non-residential real property leases for the Leased Premises as modified by the terms set forth on **Schedule 4** (collectively, the "Assigned Leases") and any security deposits held by the lessor with respect to the Assigned Leases ("Assigned Lease Security Deposits");

 e. Subject to the Bankruptcy Code and applicable non-bankruptcy law, all rights of the Estate under any non-disclosure agreements and/or confidentiality agreements necessary to the enforcement of any rights in any intellectual property as set forth in sub-paragraph 3(a); and

 f. All books and records related to the business of Debtor, subject to the limitation provided in Paragraph 4(g).

4. **Excluded Assets**. Buyer expressly understands and agrees that it is not purchasing or acquiring, and Seller is not selling or assigning any interest in any assets not specifically included in the Purchased Assets (collectively, the "Excluded Assets"), including, but not limited to:

a. All cash and cash equivalents on hand as of the Petition Date or thereafter, wherever located, including in accounts, lock boxes and similar accounts (whether maintained at a bank, savings and loan or other financial institution);

b. Except as otherwise expressly provided herein to the contrary, all accounts receivable, pre-payments, advance payments, security deposits (other than the Assigned Lease Security Deposits), escrow deposits, accounts, retainers, notes receivable, and other rights to payment, and any security, lien, claim, remedy, or other right related to any of the foregoing;

c. All future refunds and credits of income taxes and any other taxes relating to periods ending on or before the Closing including, but not limited to, any net operating losses ("NOLs");

d. All rights in and to any insurance policy or policies (and their proceeds) and any insurance rebates relating to any insurance policies;

e. Except for the rights of Buyer to sue for any past or future infringements, misappropriation, or disclosure of any rights in intellectual property as set forth in Paragraph 3(a), all rights to any claims and causes of action of any kind, whether sounding in law or in equity, including, but not limited to (i) all avoidance actions under chapter 5 of the Bankruptcy Code and (ii) all claims and causes of action against any directors and officers;

f. The Debtor's interest in Green Planet Pharma, Inc. and interests in any other incorporated or unincorporated businesses including any limited liability company, partnership or joint venture;

g. All books and records Seller deems necessary for the administration of the Bankruptcy Case; provided, however, to the extent books and records subject to this subparagraph would fall under the description set forth in Paragraph 3(f), Buyer and Seller shall cooperate on the transfer and access to any books and records required for the administration of the Bankruptcy Case. Buyer will preserve, maintain, and provide Seller with reasonable access to all of the Debtor's books and records, whether in electronic or physical format, without charge until the Bankruptcy Case is closed. For the avoidance of any doubt, Buyer will not destroy or delete any electronic or physical copies of the Debtor's books and records (including but not limited to emails) without the written permission of Seller; and

h. All rights of Seller under this Agreement or any other agreement entered into pursuant hereto.

5. **Assumed Liabilities**. Subject to the terms and conditions of this Agreement and the Sale Order, at the Closing, Seller shall assign to the Buyer and the Buyer shall assume from Seller and

3

shall perform and discharge in accordance with their respective terms, all of the Estate's obligations for the liabilities set forth below (the "Assumed Liabilities"):

  a. All employee related obligations and liabilities identified in **Schedule 5**;

  b. All obligations and liabilities owed to the vendors and other creditors identified in **Schedule 6**;

  c. All obligations and liabilities under the Assigned Contracts and Assigned Leases (collectively, the "Assigned Contracts/Leases") that are assumed by Seller and assigned to Buyer pursuant to an order or orders entered by the Court in the Bankruptcy Case including all amounts necessary to cure all defaults and to pay all actual pecuniary losses to the extent required by § 365(b)(1)(A) and (B) of the Bankruptcy Code and any order of the Court (the "Cure Amount"). Buyer shall provide a final list of all Assigned Contracts/Leases to Seller prior to the entry of the Sale Order. Notwithstanding the foregoing, no executory contract or unexpired lease shall be an Assigned Contract/Lease, whether or not listed in **Schedules 3 or 4**, to the extent such executory contract or unexpired lease is not assumed and assigned to Buyer by order of the Court for any reason whatsoever. In such an event, the previously considered Assumed Contract/Lease shall automatically be deemed an Excluded Asset without any adjustment to the Purchase Price (other than by reduction of the Cure Amount).

  d. All liabilities arising out of, or with respect to, the Purchased Assets arising after the Closing.

6. **Excluded Liabilities**. Except for the Assumed Liabilities, Buyer shall not assume, and shall not be obligated to, satisfy or perform any liability, claim or obligation of the Debtor or the Estate whether such liability, claim or obligation is asserted before or after the Closing Date.

7. **Recovery of Excluded Assets**. As additional consideration to Seller, Buyer agrees to use commercially reasonable efforts to assist Seller in locating and recovering all Excluded Assets. To the extent that Buyer collects any Excluded Assets of Seller after Closing, Buyer shall hold such funds in trust for the benefit of Seller and remit such funds to Seller within five (5) business days.

8. **Closing**. The closing (the "Closing") of the purchase and sale of the Purchased Assets hereunder will occur as soon as practicable after the date on which the Court enters an order approving this Agreement and the transactions contemplated hereunder (the "Sale Order") in a form reasonably acceptable to Buyer and Seller, or such other day as Buyer and Seller shall agree to (such day, the "Closing Date"); provided that the Closing shall only occur so long as there is not: (a) any order in effect preventing consummation of any of the transactions contemplated by this Agreement; (b) or any proceeding seeking to restrain, prevent, change, or delay the consummation of any of the transactions contemplated by this Agreement. Buyer acknowledges and agrees that the Closing will occur prior to the Court entering an order or orders authorizing the assumption by Seller and assignment to Buyer of the Assigned Contracts/Leases. Except as Buyer and Seller may otherwise agree in writing, the Closing will be performed via electronic image transmission, overnight courier, and electronic funds transfer.

9. **Seller's Closing Deliveries**. At the Closing, Seller shall deliver:

a. A duly executed bill of sale substantially in the form attached hereto as **Exhibit A** conveying title to the Purchased Assets on an "as-is, where-is" basis;

b. One or more assignment agreements ("Assignment Agreement") substantially in the form attached hereto as **Exhibit B**;

c. Any additional assignment agreements (patent, trademark, license, etc.) as deemed necessary by the Parties, substantially in the form attached hereto as **Exhibit C**;

d. A copy of the Sale Order; and

e. Such other documents as may be reasonably necessary to carry out the purpose and intent of this Agreement.

10. **Buyer's Closing Deliveries**. At the Closing, Buyer shall:

a. Pay the remaining cash balance of the Purchase Price, after application of the Deposit, by wire transfer according to instructions provided by Seller;

b. Deliver a certificate, in form and substance reasonably satisfactory to Seller, confirming that each of the conditions specified in Paragraph 11 of this Agreement is satisfied; and

c. Execute and deliver such additional documents as may be reasonably necessary to carry out the purpose and intent of this Agreement.

11. **Buyer's Representations**. Buyer represents and warrants to Seller that the statements contained in this paragraph are true and correct as of the date of this Agreement, and will be true as of the Closing Date:

a. Buyer is a corporation duly organized, validly existing, and in good standing under the laws of the State of Delaware and has all requisite corporate power and authority to own, lease, and operate its assets and to carry on its business as now being conducted;

b. Buyer has full power and authority (including full company power and authority) to execute and deliver this Agreement and to perform its obligations hereunder. The execution, delivery and performance of this Agreement have been duly authorized by Buyer. Subject to entry of the Sale Order, this Agreement constitutes the valid and legally binding obligation of Buyer, enforceable against Buyer in accordance with its terms and conditions;

c. Buyer has sufficient liquid assets to enter into the transactions contemplated herein and to pay the Purchase Price at the Closing; and

  d. Buyer has not entered into any contract to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement or the sale of the Purchased Assets.

 12. **Further Assurances**. Following the Closing and until such time as the Bankruptcy Case is closed, each of the Parties shall execute and deliver such additional documents and take such further actions as may be reasonably necessary to carry out the purpose and intent of this Agreement; *provided, however,* that Buyer shall bear all costs (including reasonable attorneys' fees) incurred by Seller in connection with any action to be taken pursuant to this paragraph, and Seller will only take such action if Buyer shall first pay Seller the reasonably anticipated costs (including attorneys' fees), as determined by Seller in his sole discretion, associated with such action.

 13. **Termination**. This Agreement may be terminated as follows:

  a. by Buyer, by written notice to Seller, if Seller materially breaches or violates this Agreement and fails to cure that breach or violation within seven (7) days following receipt of written notice thereof from Buyer;

  b. by Seller, by written notice to Buyer, if Buyer materially breaches or violates this Agreement and fails to cure that breach or violation within seven (7) days following receipt of written notice thereof from Seller;

  c. by Buyer or Seller, by written notice to the other, if the Sale Order has not been entered by April 15, 2025, subject to the Court's availability (the "Termination Date");

  d. by Buyer and Seller by mutual written agreement executed by the Parties; or

  e. without further action by either Party if the Court approves a sale of some or all of the Purchased Assets to a person or entity other than Buyer.

 14. **Remedies**.

  a. In the event of termination as the result of a breach or violation of this Agreement by Buyer, Seller shall be entitled to retain the Deposit as liquidated damages.

  b. In the event of termination as the result of a breach or violation of this Agreement by Seller, Seller shall refund the Deposit to Buyer.

  c. Buyer's sole and exclusive remedy against Seller in the event of a breach or violation of this Agreement by Seller, is limited to termination of this Agreement and the refund of the Deposit.

  d. Nothing contained in this paragraph shall prohibit Buyer from proceeding against third parties for any losses suffered by Buyer as it pertains to the extent, existence, theft, or removal of the Purchased Assets.

15. **Notices**. Any and all notices required or permitted under this Agreement will be in writing and may delivered by: (a) hand delivery; (b) email; or (c) express overnight delivery service, and will be deemed to have been delivered upon (i) receipt, if hand delivered; (ii) transmission, if delivered by email; and (iii) the next business day, if delivered by express overnight delivery service. Notices shall be delivered or transmitted to the following addresses, or to such other addresses as any of the Parties may direct in writing:

If to Seller, to:

> Jeoffrey L. Burtch, as chapter 7 trustee
> P.O. Box 549
> Wilmington, DE 19899
> jburtch@burtchtrustee.com

With a copy to:

> Mark E. Felger
> Allen J. Guon
> Cozen O'Connor
> 1201 North Market Street, Suite 1001
> Wilmington, DE 19801
> mfelger@cozen.com
> aguon@cozen.com

If to Buyer, to:

> Shannon Ralston
> Immunocell Therapeutics, Inc.
> 1202 E. Sonterra Blvd, Suite 501
> San Antonio, Texas 78258
> shannon@angelstaffing.net

With a copy to:

> Jeffrey Reisner
> Steptoe LLP
> 2029 Century Park East, Suite 980
> Los Angeles, CA 90067
> Tel: (213) 439 9452
> jreisner@steptoe.com

16. **Court Approval of Sale**. The following procedures will apply to the terms of the sale transaction contemplated by this Agreement:

    a. This Agreement is subject to the approval of the Court.

    b. Promptly upon execution of this Agreement, Seller shall file a motion pursuant to § 363 of the Bankruptcy Code seeking the entry of an order ("Sale Order") approving this Agreement and authorizing Seller to take such steps as may be necessary or appropriate to consummate the transactions contemplated hereby on an expedited basis. As time is of the essence with respect to this Agreement, Seller shall request that a hearing on the foregoing motion (the "Sale Hearing") be held not later than April 11, 2025, and the Sale Order shall contain a waiver of the stay period provided in Fed. R. Bankr. P. 6004(h).

c. Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining Court approval of the transactions contemplated by this Agreement, including (a) furnishing affidavits or other documents or information, to be filed with the Court or (b) providing testimony at the Sale Hearing. Purchaser shall not, without Seller's prior written consent, file, join in, or otherwise support in any manner whatsoever any motion or other pleading relating to the sale of the Purchased Assets hereunder.

d. Notwithstanding anything herein to the contrary, at any time and from time to time on or prior to the Closing Date, in the event that Seller reasonably believes that any of Seller's conditions to Closing in this Agreement will not be satisfied as of the Closing Date, Seller shall have the right in his sole discretion to adjourn the Closing Date for a reasonable period of time upon written notice to Buyer to the extent required to resolve any matters that are then preventing the satisfaction of such condition, but the Closing Date may not be extended to any date later than the Termination Date.

e. Notwithstanding anything in this Agreement to the contrary, Seller may consider any competing offers for the Purchased Assets received by Seller prior to the Sale Hearing (each an "Alternate Offer"). Seller in his sole and absolute discretion has the right to seek Court approval to sell the Purchased Assets pursuant to any Alternative Offer in his sole and absolute discretion. In the event that Seller receives an Alternate Offer, Buyer shall have the right to credit bid for the Purchased Assets up to the full amount of the Secured Claim as may be allowed by the Court.

17. **Assignment**. Neither Party may assign any rights or obligations under this Agreement without the prior written consent of the other Party, and any assignment without such prior written consent shall be null and void. Notwithstanding the foregoing, Buyer may assign its rights under this Agreement to any wholly-owned subsidiary, provided that no such assignment shall be deemed to release Buyer from any liability, any indemnity, or other obligation under this Agreement.

18. **Indemnity**. Buyer agrees to indemnify, defend, and hold Seller harmless from and against any liabilities (including, but not limited to, reasonable attorneys' fees and other litigation costs) that arise or result from, or in any way relate to, any use or subsequent transfer of the Purchased Assets or Assumed Liabilities from and after the Closing Date.

19. **DISCLAIMER OF WARRANTIES**. THE PURCHASED ASSETS ARE BEING SOLD "AS IS" AND "WHERE IS" AND SELLER MAKES NO, AND HEREBY DISCLAIMS ANY, REPRESENTATION OR WARRANTY WITH RESPECT TO THE PURCHASED ASSETS OR THE TRANSACTIONS CONTEMPLATED HEREBY, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO:

(A) THE OWNERSHIP, IDENTITY, SCOPE, EXISTENCE, LOCATION, OR CONDITION OF ANY ASSETS THAT MIGHT BE INCLUDED WITHIN THE SCOPE OF THE PURCHASED ASSETS, WHETHER OR NOT ANY PARTICULAR ASSET IS IDENTIFIED IN THIS AGREEMENT (INCLUDING IN ANY EXHIBIT ATTACHED HERETO);

(B) THE VALIDITY OR ENFORCEABILITY OF ANY INTELLECTUAL PROPERTY RIGHTS THAT MIGHT BE INCLUDED WITHIN THE SCOPE OF THE PURCHASED ASSETS;

(C) THE ASSIGNABILITY OR TRANSFERABILITY OF ANY OF THE PURCHASED ASSETS; OR

(D) THE APPLICABILITY OF OR COMPLIANCE WITH ANY LAWS OR REGULATIONS THAT MAY BE APPLICABLE TO ANY TRANSACTIONS CONTEMPLATED HEREIN.

BUYER ACKNOWLEDGES AND AGREES THAT BUYER IS ENTERING INTO THIS AGREEMENT WITHOUT RELYING UPON ANY SUCH REPRESENTATION, WARRANTY, STATEMENT OR OTHER ASSERTION, ORAL OR WRITTEN, MADE BY SELLER OR ANY REPRESENTATIVE OF SELLER OR ANY OTHER PERSON ACTING OR PURPORTING TO ACT FOR OR ON BEHALF OF SELLER WITH RESPECT TO THE PURCHASED ASSETS.

20. **No Contingencies**. Except for (i) Seller's performance of his obligations under this Agreement and (ii) the entry of the Sale Order in a form reasonably acceptable to Buyer there are no other contingencies for Buyer's performance of his obligation to close.

21. **Recitals**. The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full, and made a part of, this Agreement.

22. **Headings**. Paragraph headings in this Agreement are for convenience only. In no manner will any section heading in this Agreement limit any term or provision hereof.

23. **Entire Agreement**. The Sale Order shall be incorporated into and shall be part of this Agreement. This Agreement, with exhibits and schedules, sets forth the entire understanding of the Parties with respect to the subject matter addressed herein and supersedes all prior agreements, discussions, negotiations, and understandings with respect to that subject matter.

24. **Interpretation and Severance**. The provisions of this Agreement will be applied and interpreted in a manner consistent with each other so as to carry out the purposes and intent of the Parties. If, for any reason, any provision of this Agreement is determined to be unenforceable or invalid, that provision (or such part thereof as may be unenforceable or invalid) will be deemed severed from this Agreement, and the remaining provisions of this Agreement will be carried out with the same force and effect as if that provision (or such part thereof) had not been a part of this Agreement.

25. **No Third Party Beneficiaries**. This Agreement is a contract solely between Buyer and Seller. No third-party beneficiaries (including, without limitation, any of the Debtor's employees, creditors, or customers) are intended hereunder and none will be inferred herein.

26. **Amendment and Modification**. This Agreement may be amended, modified or supplemented only by written agreement of the Parties hereto.

27. **Governing Law and Jurisdiction**. This Agreement shall be governed by the laws of the United States of America as to matters of federal bankruptcy law and otherwise by the laws of the State of Delaware. With respect to matters governed by Delaware law, this Agreement shall be

construed and interpreted in accordance with its laws, notwithstanding its conflict of law principles or any other rule, regulation or principle that would result in the application of any other state's law. Seller and Buyer hereby agree that any suit, action, or proceeding arising out of or related to this Agreement shall be brought in the Court. The Court shall retain jurisdiction with respect to any matter, issue, claim, or controversy arising out of or related to this Agreement.

28. **Waiver of Jury Trial**. EACH OF THE PARTIES WAIVES ITS RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY. THE PARTIES AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS PARAGRAPH AS TO ANY ACTION, COUNTERCLAIM, OR OTHER PROCEEDING BY WHICH A PARTY SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR ANY PROVISION HEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS AGREEMENT.

29. **Counterparts**. This Agreement may be executed and delivered in counterparts and by electronic image transmission and any such execution and delivery will have the same force and effect as delivery of an original document with original signatures.

[*Signature page to follow*]

11

**WHEREFORE,** the Parties have executed this Agreement as of the date first written above.

| | |
|---|---|
| **Jeoffrey L. Burtch, solely in his capacity as the chapter 7 trustee for the bankruptcy estate of Kiromic Biopharma, Inc.** | **Immunocell Therapeutics, Inc.**, a Delaware corporation |
| _____ | By: _____ |
| | Name: |
| | Its: _____ |

**Exhibit A**

**FORM OF BILL OF SALE**

This BILL OF SALE (this "Bill of Sale") is being executed and delivered by **Jeoffrey L. Burtch, solely in his capacity as the chapter 7 trustee for the bankruptcy estate of Kiromic Biopharma, Inc.**, as of this [__] day of April 2025, to **Immunocell Therapeutics, Inc.**, a Delaware corporation ("Buyer") pursuant to that certain Asset Purchase Agreement ("Purchase Agreement"), dated as of April [__], 2025. Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement.

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Seller does hereby grant, bargain, transfer, sell, assign, convey, and deliver to Buyer all of Seller's right, title, and interest in and to the Purchased Assets, free and clear of all claims, liens, and encumbrances, it being understood that Buyer shall not take title to any property of Seller's assets other than the Purchased Assets.

**IT IS EXPRESSLY UNDERSTOOD THAT THIS TRANSFER IS ON AN "AS IS" AND "WHERE IS" BASIS AND SELLER DOES NOT WARRANT THE FITNESS OR CONDITION OF THE PURCHASED ASSETS FOR ANY PARTICULAR USE OR PURPOSE. SELLER EXPRESSLY DISCLAIMS ANY REPRESENTATION OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE, CONDITION, DESIGN, OPERATION, CAPACITY OR OTHERWISE.**

This Bill of Sale is being delivered pursuant to the Purchase Agreement and shall be construed consistently therewith. To the extent of any inconsistency between this Bill of Sale and the Purchase Agreement, the Purchase Agreement shall control and prevail.

This Bill of Sale shall be construed and interpreted according to the laws of the State of Delaware, without regard to the conflicts of law rules thereof.

Delivery of this Bill of Sale electronic transmission shall be effective as delivery of a manually executed original.

Jeoffrey L. Burtch, solely in his capacity
as the chapter 7 trustee for the bankruptcy
estate of Kiromic Biopharma, Inc.

**EXHIBIT B**

**FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT**

This Assignment and Assumption Agreement dated as of April [ ], 2025 (the "Effective Date"), by and between Jeoffrey L. Burtch, solely in his capacity as the chapter 7 trustee (the "Assignor") for the bankruptcy estate (the "Estate") of Kiromic Biopharma, Inc. (the "Debtor"), a debtor under the United States Bankruptcy Code in a case pending before the United States Bankruptcy Court for the District of Delaware (the "Court"), Case No. 25-10552-MFW; and Immunocell Therapeutics, Inc., a Delaware corporation (the "Assignee").

NOW, THEREFORE, THE PARTIES HERETO AGREE AS FOLLOWS:

1. As of the Effective Date, Assignor hereby assigns to Assignee all of the Debtor's and the Estate's right, title and interest in and to the executory contracts and unexpired leases identified on **Exhibit 1** attached hereto (collectively the "Executory Contracts and Leases"), without warranty or representation of any kind, express or implied, and without recourse in any event, pursuant to the terms of the Purchase and Sale Agreement dated April [ ], 2025 by and between Assignor and Assignee (the "Purchase Agreement") approved by an Order of the Court dated April [ ], 2025 (the "Sale Order").

2. Assignee hereby assumes all of the Debtor's and the Estate's right, title and interest, and obligations under the Executory Contracts and Leases from and after the Effective Date.

3. Assignee shall be liable for any defaults under the Executory Contracts and Leases.

4. Assignor conveys the Debtor's and the Estate's rights and interests under the Executory Contracts and Leases to Assignee free and clear of all liens, claims, interests, or encumbrances, if any, with any such liens, interests, claims, or encumbrances attaching to the proceeds of the sale as set forth in the Sale Order.

5. Assignee and Assignor agree that the Court shall retain jurisdiction over any and all disputes hereunder and hereby consent to such jurisdiction.

6. This Agreement may not be assigned by either party hereto without the prior written consent of the other party. This Agreement may be executed in any number of counterparts, by original or .PDF signature, each of which when executed and delivered shall be deemed an original, and such counterparts together shall constitute one instrument.

7. Assignee acknowledges that the foregoing assignment of the Executory Contracts and Leases relieves the Assignor, the Debtor and the Estate from any liability for any breach of the Executory Contracts and Leases occurring after the assignment. Assignee shall indemnify Assignor and hold Assignor harmless for, from and against any liability, damage and expense (including attorneys' fees) arising out of, in connection with or related to the obligations, covenants, and agreements of Assignor, the Debtor or the Estate under the Executory Contracts and Leases to be performed or observed from and after the Effective Date, and any actions, causes of action or proceedings related thereto.

8. At any time after the Effective Date, Assignee and Assignor agree to execute and deliver such further instruments and documents as may be reasonably requested by the parties hereto,

including the execution and delivery of individual assignments of the Executory Contracts and Leases (in substantially the same form as this Agreement).

      IN WITNESS WHEREOF, Assignor and Assignee have executed this Assumption and Assignment Agreement as of the day and year first above written.

| **ASSIGNOR:** | **ASSIGNEE:** |
|---|---|
| Jeoffrey L. Burtch, solely in his capacity as the chapter 7 trustee for the bankruptcy estate of Kiromic Biopharma, Inc. | **Immunocell Therapeutics, Inc.**, a Delaware corporation |
| _____ | By:_____ |
| | Name:_____ |
| | Its:_____ |

## **SCHEDULES 1–6**

**To Be Filed**

**EXHIBIT C**

**To Be Filed**