**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: KIROMIC BIOPHARMA, INC., Debtor. | Chapter 7 Case No. 25-10552 (MFW) **RE: D.I. 18 & 22** |
|---|---|

**DECLARATION OF JEOFFREY L. BURTCH IN SUPPORT OF TRUSTEE'S MOTION FOR ENTRY OF ORDER APPROVING SALE OF ASSETS**

Jeoffrey L. Burtch, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1. I am the chapter 7 trustee (the "Trustee") in the above-captioned bankruptcy case, and I respectfully submit this declaration in support of the *Chapter 7 Trustee's Motion for Entry of an Order: (A) Approving Asset Purchase Agreement Pursuant to 11 U.S.C. § 363(b) and (f); and (B) Granting Related Relief* (the "Sale Motion").[1] [D.I. 18.]

2. On March 21, 2025 (the "Petition Date"), Kiromic Biopharma, Inc. (the "Debtor") filed a voluntary petition with the Court for relief under chapter 7 of the Bankruptcy Code.

3. On the Petition Date, I was appointed as interim trustee of the Estate pursuant to § 701 of the Bankruptcy Code. The Section 341 Meeting of Creditors is scheduled for April 15, 2025.

4. Prior to the Petition Date, the Debtor was a clinical-stage biotherapeutics company developing proprietary cancer treatments that are currently subject to clinical trials. The Debtor primarily conducted its operations and research out of a leased facility located at 7707 Fannin Street, Suite 200, Houston, Texas (the "Leased Facility"). The Debtor asserts that it ceased all operations as of the Petition Date, and I am not operating its business.

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Sale Motion or the APA, as applicable.

5. The Debtor possesses certain intellectual property developed to treat patients with stage 4 metastatic or locally-advanced non-small cell lung cancer who have failed to respond to standard therapies. The Debtor has three product candidates in development. Of these three product candidates, only one – Deltacel – is currently the subject of a clinical trial ("Deltacel Trial"), whereas the other two products are still in development in the pre-trial stage.

6. The Debtor's former Chief of Staff, Dr. Scott Dahlbeck, has represented in his declaration that the U.S. Food and Drug Administration (the "FDA") has placed the Deltacel Trial on inactive status because the Debtor has ceased operations and that there is an urgent need to restart the clinical trial to, among other things, (i) resume production of Deltacel to insure availability for patients, (ii) retain key scientific and medical personnel to maintain the integrity of the Deltacel Trial, (iii) ensure compliance with FDA regulations to reactivate the Deltacel Trial, (iv) prevent the denial of new patients into the Deltacel Trial, and (v) avoid the loss of value of the Debtor's intellectual property and research.

7. S.hield Cap1tal Funding LLC ("S.hield Cap1tal"), the Debtor's largest equity holder, provided the working capital to operate the Debtor's business. Based on the information contained in the Debtor's schedules, between April 2024 and January 2025, S.hield Cap1tal made loans to the Debtor pursuant to eight secured promissory notes in the original principal amount of $14,239,703 (the "Secured Claim").

8. Shortly after the Petition Date, my counsel was contacted by counsel for Immunocell Therapeutics, Inc. (the "Buyer") regarding the purchase of substantially all of the Debtor's assets. Shannon Ralson is the sole member and manager of S.hield Cap1tal and the sole director and stockholder of the Buyer. Shield Cap1tal, assigned its claim to Buyer for the purpose of acquiring the Debtor's assets.

9. After arm's length negotiations, and the exchange of multiple counter offers, the Buyer and I reached an agreement as reflected in the Asset Purchase Agreement (the "APA") attached to the Sale Motion as Exhibit A. The principal terms of the APA are as follows:

| Agreement Provision | Summary Description |
|---|---|
| **Seller** | Jeoffrey L. Burtch, solely in his capacity as chapter 7 trustee for the bankruptcy estate of the Debtor. |
| **Buyer** | Immunocell Therapeutics, Inc. |
| **Consideration (APA at §§ 1, 2, 7)** | The purchase price for the Purchased Assets (as defined below) shall be comprised of the following (the "Purchase Price"):<br>a) $250,000 in cash (the "Cash Payment");<br>b) Assumption by Buyer of the Assumed Liabilities; and<br>c) a credit bid of Buyer's Secured Claim in the amount $5,000,000.<br>As additional consideration to Seller, Buyer agrees to use commercially reasonable efforts to assist Seller in locating and recovering all Excluded Assets. To the extent that Buyer collects any Excluded Assets of Seller after Closing, Buyer shall hold such funds in trust for the benefit of Seller and remit such funds to Seller within five (5) business days. |
| **Purchased Assets (APA at §§ 3, 19)** | All of the Estate's right, title, and interest in and to the following on an "as is-where is" basis without representation or warranty of any kind or nature:<br>a) All intellectual property, including but not limited to all patents, copyrights, trademarks and any goodwill in any marks, know how, trade secrets, trademarks, customer lists, product lists, data bases; all clinical data and records; domain names; and records and information related to all clinical trials or the business of Debtor, whether stored onsite or in another database, identified on **Schedule 1**, and the right to sue for any past or future infringement, misappropriation, or disclosure of any rights in such intellectual property;<br>b) All furniture, fixtures, equipment, inventory, machinery, tools, office equipment, supplies, computers, telephones, and other tangible property (and any software associated therewith) owned by the Debtor and located at the Leased Premises, plus all doses of Deltacel which may be located offsite, including but not limited to those items identified on **Schedule 2**;<br>c) All of the Estate's rights and obligations under the executory contracts and unexpired leases of personal property specifically listed in **Schedule 3** (collectively the "Assigned Contracts"); |

| Agreement Provision | Summary Description |
|---|---|
| | d) All of the Estate's rights and obligations under unexpired leases of non-residential real property leases for the Leased Premises as modified by the terms set forth on **Schedule 4** (collectively, the "Assigned Leases") and any security deposits held by the lessor with respect to the Assigned Leases ("Assigned Lease Security Deposits");<br>e) Subject to the Bankruptcy Code and applicable non-bankruptcy law, all rights of the Estate under any non-disclosure agreements and/or confidentiality agreements necessary to the enforcement of any rights in any intellectual property as set forth in sub-paragraph 3(a); and<br>f) All books and records related to the business of Debtor, subject to the limitation provided in Paragraph 4(g). |
| **Excluded Assets (APA at § 4)** | Buyer expressly understands and agrees that it is not purchasing or acquiring:<br>a) All cash and cash equivalents on hand as of the Petition Date or thereafter, wherever located, including in accounts, lock boxes and similar accounts (whether maintained at a bank, savings and loan or other financial institution);<br>b) Except as otherwise expressly provided herein to the contrary, all accounts receivable, pre-payments, advance payments, security deposits (other than the Assigned Lease Security Deposits), escrow deposits, accounts, retainers, notes receivable, and other rights to payment, and any security, lien, claim, remedy, or other right related to any of the foregoing;<br>c) All future refunds and credits of income taxes and any other taxes relating to periods ending on or before the Closing including, but not limited to, any net operating losses ("NOLs");<br>d) All rights in and to any insurance policy or policies (and their proceeds) and any insurance rebates relating to any insurance policies;<br>e) Except for the rights of Buyer to sue for any past or future infringements, misappropriation, or disclosure of any rights in intellectual property as set forth in Paragraph 3(a), all rights to any claims and causes of action of any kind, whether sounding in law or in equity, including, but not limited to (i) all avoidance actions under chapter 5 of the Bankruptcy Code and (ii) all claims and causes of action against any directors and officers;<br>f) The Debtor's interest in Green Planet Pharma, Inc. and interests in any other incorporated or unincorporated businesses including any limited liability company, partnership or joint venture;<br>g) All books and records Seller deems necessary for the administration of the Bankruptcy Case; provided, however, to the extent books and records subject to this subparagraph would fall under the description set forth in Paragraph 3(f), Buyer and Seller shall cooperate on the transfer and access to any books and records required for the |

| Agreement Provision | Summary Description |
|---|---|
| | administration of the Bankruptcy Case. Buyer will preserve, maintain, and provide the Trustee with reasonable access to all of the Debtor's books and records, whether in electronic or physical format, without charge until the Bankruptcy Case is closed. For the avoidance of any doubt, Buyer will not destroy or delete any electronic or physical copies of the Debtor's books and records (including but not limited to emails) without the written permission of Seller; and<br>h) All rights of Seller under this Agreement or any other agreement entered into pursuant hereto. |
| **Assumed Liabilities (APA at § 5)** | Seller shall assign to Buyer and Buyer shall assume from Seller and shall perform and discharge in accordance with their respective terms, all of the Estate's obligations for the liabilities set forth below:<br>a) All employee related obligations and liabilities identified in **Schedule 5**;<br>b) All obligations and liabilities owed to the vendors and other creditors identified in **Schedule 6**;<br>c) All obligations and liabilities under the Assigned Contracts and Assigned Leases (collectively, the "Assigned Contracts/Leases") that are assumed by Seller and assigned to Buyer pursuant to an order or orders entered by the Court in the Bankruptcy Case including all amounts necessary to cure all defaults and to pay all actual pecuniary losses to the extent required by § 365(b)(1)(A) and (B) of the Bankruptcy Code and any order of the Court (the "Cure Amount"). Buyer shall provide a final list of all Assigned Contracts/Leases to Seller prior to the entry of the Sale Order. Notwithstanding the foregoing, no executory contract or unexpired lease shall be an Assigned Contract/Lease, whether or not listed in **Schedules 3 or 4**, to the extent such executory contract or unexpired lease is not assumed and assigned to Buyer by order of the Court for any reason whatsoever. In such an event, the previously considered Assumed Contract/Lease shall automatically be deemed an Excluded Asset without any adjustment to the Purchase Price (other than by reduction of the Cure Amount).<br>d) All liabilities arising out of, or with respect to, the Purchased Assets arising after the Closing. |
| **Sale Order (APA at § 16)** | The APA requires entry of the Sale Order approving the sale free and clear of liens and encumbrances. |
| **Key Dates (APA at § 13, 16)** | The APA may be terminated by Buyer or Seller if the Sale Order has not been entered by April 15, 2025, subject to the Court's availability (the "Termination Date"). |

10. Buyer's consideration is comprised of four components. First, Buyer is offering cash consideration in the amount of $250,000 (the "Cash Payment"). The Buyer also provided a $25,000 deposit to be credited against the Purchase Price. The Cash Payment will be free and clear of all liens, encumbrances or other interests of Buyer and will be available to pay administrative expenses and claims of the Estate other than the Secured Claim. Second, Buyer is offering a credit bid of its Secured Claim in the amount of $5 million. Third, Buyer is assuming certain liabilities of the Debtor including (a) approximately $475,000 in vendor and cure claims under the under the Assigned Contracts/Leases, (b) approximately $315,000 in unpaid employee wage claims, and (c) significant pre and postpetition liabilities of the Estate under the Facility Lease.

11. Importantly, the APA excludes, among other things, all cash and cash equivalents (except those related to the Assigned Contracts/Leases), insurance policies and their proceeds, as well as all causes of action including any avoidance actions under chapter 5 of the Bankruptcy Code and claims against any directors and officers. There are also no releases granted in the APA. While the APA transfers the Debtor's books and records to Buyer, the Buyer will preserve, maintain, and provide the Estate with reasonable access to all of the Debtor's books and records, whether in electronic or physical format, without charge until the Bankruptcy Case is closed.

12. In conjunction with the sale, I will seek to assume and assign to Buyer the Assigned Contract/Leases. The counterparties to the Assigned Contracts/Leases (the "Counterparties") will receive notice that their contracts and leases may be assumed and assigned along with the proposed cure amounts, if any (the "Cure Notice"). The Counterparties will have 13 days from service of the Cure Notice in which to object to the assumption or cure amount, and if no objection is received, the contract shall become an Assigned Contract/Lease. The cash consideration paid to

the Estate will not be reduced in the event that Buyer that any of the proposed Assigned Contracts/Leases cannot be assumed and assigned to Buyer.

13. Under the extraordinary circumstances of this case, I favor proceeding by way of a private sale on an expedited basis. My determination is based upon my review of the Debtor's filings in the case, my discussions with principals of the Debtor and the Buyer/secured creditor, the declaration of Dr. Dahlbeck, and the total consideration provided under the APA.

14. First, I believe that avoiding harm to cancer patients enrolled in the Deltacel Trials provides a basis to request expedite relief. Dr. Dahlbeck has represented in his declaration that the FDA's decision to place the Deltacel Trial on inactive status has negatively affected two terminally ill patients whose cancer treatment was interrupted and prematurely terminated and at least three more patients who were scheduled to start in the Deltacel Trial. There are other cancer patients who may be eligible for the Deltacel treatment but do not have the option to participate until the Deltacel Trial is restarted. According to Dr. Dahlbeck, unless there is a sale to a purchaser invested in preserving and reactivating the Deltacel Trial as soon as possible to facilitate expedited approval by the FDA, these patients will not be able to receive the Deltacel treatment. Based upon his representations, I agree with Dr. Dahlbeck that there is a unique urgency and need for an expedited sale to restore the Deltacel Trial for the benefit terminally ill cancer patients. Further, the Buyer has confirmed that it intends to restart the Deltacel Trial as soon as possible after the closing of the sale.

15. Second, I also believe the consideration offered by Buyer represents a fair outcome that maximizes the value of the Purchased Assets. The transaction provides substantial compensation to the Estate and its creditors including (i) a $250,000 cash payment to the Estate, (ii) the assumption of approximately $315,000 in unpaid employee wages, (iii) the assumption of

$475,000 in vendor and cure claims under the Assigned Contracts/Leases; (iv) the assumption of significant pre and postpetition liabilities of the Estate under the Facility Lease. The proposed transaction also preserves jobs because the Buyer intends to rehire a number of the Debtor's former employees as part of its efforts to reactivate the Deltacel Trial.

16. Third, the proposed purchase price includes a $5 million credit bid of Buyer's $14.2 million claim, which is secured by the Debtor's fixtures, equipment, intellectual property and their proceeds. Another potential purchaser must be willing to pay over $15 million for the Purchased Assets based on Buyer's current consideration and credit bidding capacity. Given the lack of funding to operate the Debtor's business and the need to resume the Deltacel Trial, I do not believe that it is feasible to attempt to sell the Debtor's business as a going concern and locate potential buyers willing to bid in excess of $15 million through a traditional marketing program. In sum, I believe that the Buyer has submitted an offer that appears superior to any other offer that I might reasonably expect, if any other comparable offer were to be made.

17. While unlikely given the time constraints, as an additional test of the fairness of the APA, I will consider alternative offers for the Purchased Assets until the commencement of the sale hearing (the "Response Deadline"). If an alternative offer is received in writing on or before the Response Deadline that I determine to be higher and better than that under the APA, I will confer with the potential buyers and use the hearing date on the Sale Motion as a status conference to report to the Court on the status of competing offers and a proposed procedure to conduct a prompt auction. I will thereafter return to Court seeking approval of the sale to the bidder submitting the highest and best offer for the Purchased Assets.

18. I received three inquiries about acquiring the Purchased Assets since the filing of the Sale Motion, of which two were from equipment liquidators. My counsel provided a copy of

the Sale Motion to those parties. As of the filing of this Declaration, I have not received any offers to acquire the Debtor's assets.

19. Based upon all the foregoing facts, I submit that the sale serves the Estate's best interests and represents a sound exercise of my business judgement. The sale brings additional funds to the Estate, reduces the Secured Claim, pays outstanding prepetition wages to employees, assumes significant prepetition liabilities, assumes contracts and leases, retains jobs, and maintains a clinical trial that may provide promising results for certain cancer patients with terminal diagnoses. Thus, when taken as a whole, I believe the consideration offered by Buyer represents a fair and prudent outcome, while maximizing the value of the Purchased Assets for the Estate and other parties in interest including avoiding harm to cancer patients currently enrolled in the Deltacel Trials.

20. The Sale Motion was served upon all parties of which I am aware that may have an interest in the Purchased Assets, and I believe that the notice of sale was reasonable and appropriate under the circumstances.

21. I therefore submit that the proposed sale serves the Estate's best interests and represents a sound exercise of my business judgment for purposes of § 363(b) of the Bankruptcy Code.

I hereby declare the foregoing to be true and correct.

Dated: April 11, 2025

*/s/ Jeoffrey L. Burtch*
Jeoffrey L. Burtch, Chapter 7 Trustee